1
2
3
4
5
6
7
8
9
10
11
12
13

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Owen Arvie Thompson, | ) | Case No. CV 05-1388-PHX-FJM (JM) |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | |
| Dora Schriro, et al., | ) | |
| Respondents. | ) | |

14  Petitioner is a state prisoner proceeding through counsel with an application for a writ

15  of habeas corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2000

16  conviction on two counts of molestation of a child.  In accordance with the Rules of Practice

17  of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this

18  matter was referred to the Magistrate Judge for report and recommendation.  As explained

19  below, the Magistrate Judge recommends that the District Court, after an independent review

20  of the record, dismiss Ground I (due process) due to procedural default and Ground II

21  (ineffective assistance of counsel) on the merits.  Alternatively, it is recommended that

22  Ground I also be denied on the merits.

23  **I.      FACTUAL AND PROCEDURAL BACKGROUND**

24  By indictment filed November 10, 1997, the State charged Petitioner with three counts

25  of molestation of a child, class 2 felonies, and dangerous crimes against children.  (Ex. A.)[1]

26  The charges arose from allegations that Petitioner, on three different occasions in August of

27

28  _____

[1] Unless otherwise noted, all referenced exhibits are those attached to Respondent's Answer to the Petition.

1   1997, had molested Bradley James Shaw, a child under the age of fifteen.  (*Id.*)

2   On December 15, 1997, the State filed an Allegation of Predicate Felony, amending

3   the indictment to allege that Petitioner had committed two predicate felonies of sexual

4   contact with a minor in 1982, requiring sentencing pursuant to A.R.S. § 13-604.01.  (Ex. B.)

5   The State also filed a notice of intent to use other crimes, wrongs or acts pursuant to Rules

6   404(b) and (c), or the Arizona Rules of Evidence.  (Ex. C.)

7   On September 24, 1998, the court held a pretrial motions hearing during which

8   Petitioner waived his right to a jury trial, agreeing to a trial to the court.  (Ex. E.)  Petitioner

9   also admitted his prior convictions.  (*Id.*)  The State stipulated to the dismissal of Count 2 of

10  the indictment, and to the dismissal of one of the two allegations of predicate felonies.  (*Id.*)

11  The trial court found that Petitioner's waiver of a jury trial, and admission of the prior

12  felonies were knowing, voluntary, and intelligent.  (*Id.*)  Petitioner also stipulated to the

13  admission of other crimes, wrongs, or acts to prove an aberrant sexual propensity.  (*Id.*)  The

14  trial court accepted the parties' stipulations on certain factors related to the admission of the

15  404(c) evidence, but took testimony regarding the remoteness of the prior felonies, and

16  concluded that their remoteness was not unfairly prejudicial.  (*Id.*)

17  The case then proceeded to trial.  The state court summarized the facts as follows:

18      [Petitioner's] and the victim's families resided at Shangri-La, a
        "clothing optional" resort.  The victim, a twelve year old child,
19      often went to the swimming pool to play, where the swimmers
        do not wear clothes.  During August 1997, [Petitioner] engaged
20      in sexual contact with the victim on more than twenty occasions.
        On August 23, 1997, [Petitioner's] and the victim's families met
21      other people at Lake Pleasant for boating.    While on
        [Petitioner's] boat, [Petitioner] again engaged in sexual contact
22      with the victim.

23  (Ex. H, at 2.)  Based on these facts, the trial judge found Petitioner guilty on both remaining

24  counts of the indictment.  (Ex. F.)  Petitioner was subsequently sentenced to two consecutive

25  28-year terms of imprisonment.  (Ex. G.)

26  Petitioner timely appealed his conviction, contending that the trial court erred in

27  admitting aberrant sexual propensity evidence, and that he received ineffective assistance of

28  counsel.  (Ex. H.)  On February 22, 2000, the Arizona Court of Appeals affirmed the

- 2 -

convictions and sentences. (*Id.*)  The court rejected Petitioner's contention that fundamental error occurred with the admission of aberrant sexual propensity evidence. (*Id.* at 3-4.) The court held that the remoteness of the other acts did not preclude their admission into evidence. (*Id.* at 5.) The court refused to review on direct appeal Petitioner's claim for ineffective assistance of counsel, instead acknowledging it as "potentially meritorious," and recommending that it be raised in a Rule 32 petition. (*Id.* at 5-6.)

During the pendency of his direct appeal, Petitioner field a petition for post-conviction relief. (Ex. I.)  In the petition, Petitioner alleged seven separate claims of ineffective assistance of counsel. (*Id.*)  The trial court found that Petitioner had raised credible allegations of ineffective assistance of trial counsel, and granted Petitioner an evidentiary hearing. (Ex. J.)  After the hearing, the trial court concluded that Petitioner had proven his claim of ineffective assistance of counsel by a preponderance of the evidence. (Ex. K.)  In reaching this conclusion, however, the court found that, "there is no reasonable probability that a hearing on various pretrial motions would have produced different results at trial." (*Id.* at 3.)  Nevertheless, the court vacated the convictions and granted Petitioner a new trial. (*Id.*)

Petitioner filed a Supplemental Witness List with the trial court indicating that he intended to present testimony about his character and that of the victim. (Ex. M.)  The state moved in limine to preclude the proposed testimony under Arizona Rules of Evidence Rules 404 and 405(b), and on relevancy grounds. (Ex. N.)  At the pretrial hearing, Petitioner also indicated his intention to introduce evidence to rebut the State's evidence of aberrant sexual propensity. (Ex. O at 9-11.)  Petitioner also moved to preclude evidence of materials depicting sexual scenarios with children found in Petitioner's personal effects. (*Id.* at 13-14.) Petitioner also asked the trial court to reconsider the ruling on the admission of the other acts evidence. (*Id.* at 202-203.)

The trial court ruled that evidence to rebut a character trait for aberrant sexual propensity would not be admitted. (Ex. P at 5.)  It also ruled that the other act evidence would be admitted to show lack of mistake, which is a proper purpose under Rule 404(b). (*Id.* at 5-6.)  The trial court ruled that the State could not introduce in its case-in-chief the

material depicting sexual scenarios with children, but would be permitted to use this evidence if it became relevant to rebuttal of the Petitioner's testimony if he elected to testify. (*Id.* at 8.) Pursuant to Rule 404(c), the court found that Petitioner had a character trait giving rise to an aberrant sexual propensity to commit the offense charged. (*Id.* at 76-79.) In doing so, the court adopted the findings on remoteness from the previous trial. (*Id.* at 78.)

In accord with these rulings, the trial court allowed at the retrial the testimony of Richard Foss and Bradford Norwood. Foss, after giving some personal background information, testified that in 1982 he was interviewed by a detective from the Phoenix Police Department regarding Petitioner. (Ex. P, p. 151-52.) Foss explained that in the early 1980's his best friend was Petitioner's son, David Thompson, who lived nearby. (*Id.*, pp. 152-53.) One day while visiting David, Petitioner began wrestling and tickling them both. (*Id.*, p. 153.) David left the room and Petitioner stopped tickling Foss, who was then on his back. (*Id.*) Foss explained that Petitioner then "unzipped my pants and removed my penis, and from there for about ten minutes would fondle my penis with his hand and alternate using his mouth as well." (*Id.*) A few days later, Petitioner was again tickling the boys and again attempted to unzip Foss' pants. (*Id.*, p. 155.) Foss told him "no," and Petitioner "just walked away." (*Id.*)

Norwood testified that in the early 1980's, when he was about 10 years old, he lived with his family in the same Phoenix neighborhood where Petitioner resided. (Ex. Q, pp. 146-47.) Norwood's step-father introduced him to Petitioner and Norwood became interested in Petitioner's photography hobby and began visiting Petitioner's home. (*Id.*, p. 148-49.) Petitioner had a motor home parked at his house which he used as a dark room. (*Id.*, p. 149.) While in the motor home, Petitioner began showing Norwood "books of naked people and just things started happening." (*Id.*) Petitioner then exposed himself and touched Norwood's penis with his hands and mouth. (*Id.*, p. 151.) Petitioner told him not to tell his mother or father about the incident. (*Id.*, pp. 151-52.) Subsequently, there were four more incidents, "and the 5th time was the worst one." (*Id.*, p. 152.) On that occasion, Petitioner put his penis in Norwood's mouth. (*Id.*, p. 153.) Norwood, after questioning from his mother, told her

1   what had happened and the police were called.  (*Id.*)

2          At the conclusion of the second trial, the jury found Petitioner guilty of Count 2 (last

3   incident in the  community pool) and Count 3 (incident at Lake Pleasant).  (Ex. R.)  The trial

4   court found beyond a reasonable doubt that Petitioner had committed the predicate felonies.

5   (Ex. S.)  The trial court imposed life sentences, to be served consecutively, on each of the

6   two counts.  (*Id.*)

7          Petitioner timely appealed, raising the following issues:

8                  1.      Did the trial court err in allowing evidence of other acts
                           attributed to the [Petitioner]?
9
                   2.      Did the trial court err in failing to allow Appellant to
10                          present testimony to rebut the inferences of 404(c)?

11                 3.      Did the trial court err in instructing the jury on flight?

12   (Ex. T at 5.)  By Memorandum Decision filed February 5, 2002, the Court of Appeals

13   affirmed Petitioner's conviction and sentence.  (Ex. U.)  Petitioner filed a petition for review

14   raising only the issue of whether the trial court erred in admitting evidence of aberrant sexual

15   propensity.  (Ex. V.)  The Arizona Supreme Court summarily denied review.  (Ex. W.)

16          On July 12, 2002, Petitioner filed a notice of post-conviction relief.   (Ex. X.)

17   Petitioner submitted the petition for post-conviction relief on October 29, 2002, contending

18   that appellate counsel was ineffective for failing to preserve federal constitutional claims of

19   due process and equal protection violations premised on the admission of aberrant propensity

20   evidence.  (Exhibit Y.)   The trial court dismissed the petition because Petitioner had failed

21   to show any colorable claim entitling him to post-conviction relief.  (Ex. Z.)  Petitioner then

22   sought review by the Arizona Court of Appeals, arguing again that his appellate counsel's

23   performance was deficient because he failed to properly "federalize" the propensity issue.

24   (Ex. AA at 10.)  By Order dated June 14, 2004, the Arizona Court of Appeals summarily

25   denied review.  (Ex. BB.)  On October 27, 2004, Petitioner's petition for review to the

26   Arizona Supreme Court was also summarily denied.  (Ex. DD.)

27          On May 11, 2005, Petitioner timely filed the pending habeas corpus petition.

28   Petitioner alleges the following claims and supporting facts:

1.    The prosecution was allowed to present evidence that I had suffered two prior felony convictions involving sexual contact with a minor 15 years earlier pursuant to Rules 404(b) and (c) of the Arizona Rules of Evidence, and the jury was instructed that, if they found by clear and convincing evidence that I had suffered these convictions, they could infer from this that I had a propensity to commit, and did commit, the child molestation offenses charged in my current case.

2.    Both my trial and direct appeal attorneys raised the issue of the jury's improper consideration of the prior crimes propensity evidence. However, they failed to frame this issue precisely in terms of a violation of my federal constitutional due process rights under the Fourteenth Amendment, and thus may have failed to exhaust this federal constitutional issue for federal habeas purposes.

*Attachment to Petition*.

## II.    LEGAL DISCUSSION

### A.    Timeliness under the AEDPA

The writ of habeas corpus affords relief to persons in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3).  The petition must be filed within the applicable statute of limitations or it will be dismissed.  The statute of limitations was created by the Antiterrorism and Effective Death Penalty Act (AEDPA) which reads in pertinent part as follows:

(1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

***

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §§ 2244(d)(1)(A) & (d)(2).

Under 28 U.S.C. § 2244(d)(2), the statute of limitations on Petitioner's federal habeas petition was tolled while he completed "one full round" of state collateral review.  *Carey v. Saffold*, 536 U.S. 214, 222 (2002).  Petitioner's state conviction became final on May 23,

- 6 -

2002, the date on which the Arizona Supreme Court denied Petitioner's petition on direct review.  (Ex. W.)  Thereafter, on July 12, 2002, Petitioner filed a timely notice of post-conviction relief, thereby tolling the one-year statute of limitation.  (Ex. X.)  The running of the limitations period remained tolled until the Arizona Supreme Court denied review of Petitioner's petition for post-conviction relief on October 27, 2004.  (Ex. DD.)  Accordingly, Petitioner had one year from October 27, 2004 within which to timely file his federal Petition for Writ of Habeas Corpus.  The petition was filed on May 11, 2005, and is therefore timely.

### B.    Exhaustion of State Remedies

Respondent contends that Petitioner has failed to exhaust his state remedies in relation to Ground I of the Petition, where he alleges that the admission of his prior felony convictions amounted to a violation of due process.  A state prisoner must exhaust the available state remedies before a federal court may consider the merits of his habeas corpus petition.  *See* 28 U.S.C. § 2254(b)(1)(A) (West 1994 & Supp. 2003); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir. 1999).  Exhaustion occurs either when a claim has been fairly presented to the highest state court, *Picard v. Connor*, 404 U.S. 270, 275 (1971), or by establishing that a claim has been procedurally defaulted and that no state remedies remain available, *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Exhaustion requires that a habeas petitioner present the substance of his claims to the state courts in order to give them a "fair opportunity to act" upon these claims.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999).  A claim has been "fairly presented" if the petitioner has described the operative facts and legal theories on which the claim is based.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44 F.3d 1396, 1403 (9th Cir. 1995).  The operative facts must be presented in the appropriate context to satisfy the exhaustion requirement.  The fair presentation requirement is not satisfied, for example, when a claim is presented in state court in a procedural context in which its merits will not be considered in the absence of special circumstances.  *Castille*, 489 U.S. at 351.  An exact correlation of the claims in both state and federal court is not required.  *Rice,* 44 F.3d at 1403.  The substance of the federal claim, however, must have been fairly presented to the state

- 7 -

courts. *Chacon v. Wood*, 36 F.3d 1459, 1467 (9th Cir. 1994) (citations omitted).

A petitioner may also exhaust his claims by either showing that a state court found his claims defaulted on procedural grounds or, if he never presented his claims in any forum, that no state remedies remain available to him. *See Jackson v. Cupp*, 693 F.2d 867, 869 (9th Cir. 1982). "To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then present his claims to the Arizona Court of Appeals. *See Swoopes*, 196 F.3d 1008, 1010 9th Cir. 1999).

**1.      Ground I Was Not Presented As A Federal Issue In State Court.**

Respondent contends that Petitioner's due process claim was not presented as a federal issue and, therefore, the state courts were not on notice that a federal claim was being asserted. *Answer*, at p. 11. In Ground II of the Petition, Petitioner, who was *pro se* at the time of filing, acknowledges that the claim was not framed in terms of a violation of his federal rights. Nevertheless, in the Reply, Petitioner's counsel argues that the claim was, in fact, adequately presented. Additionally, in both the Petition and the Reply, Petitioner contends that, if the claim was not fairly presented to the state courts, the failure was due to the ineffectiveness of his trial and direct appeal attorneys.

As a threshold matter, the record clearly establishes that Petitioner did not frame his due process claim in federal terms. The Ninth Circuit Court of Appeals has held that a state prisoner has not fairly presented federal claims in state court unless he specifically indicated to that court that the claims were based on federal law. *See, e.g., Lyons v. Crawford,* 232 F.3d 666, 669-70 (2000), *as amended by* 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of evidence, right to be tried by impartial jury and ineffective assistance of counsel lacked the specificity and explicitness required to present federal claim); *Shumway v. Payne,* 223 F.3d 982, 987-88 (9th Cir. 2000) (broad reference to "due process" insufficient to present federal claim); *see also Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish

1  exhaustion.").  A petitioner must make the federal basis of a claim explicit by citing specific

2  provisions of federal statutory or case law, even if the federal basis of a claim is "self-

3  evident," *Gatlin v. Madding,* 189 F.3d 882, 888 (9th Cir. 1999), or by citing state cases that

4  explicitly analyze the same federal constitutional claim, *Peterson v. Lampert,* 319 F.3d 1153,

5  1158 (9th Cir. 2003) (en banc).

6       Here, Petitioner cannot establish he satisfied these exhaustion requirements.  In his

7  brief on direct appeal of his conviction, even a cursory mention of a federal basis for this

8  claim does not appear.  (Ex. O, pp. 6-10).  There, Petitioner based his claim on Rules 404(b)

9  and (c) of the Arizona Rules of Evidence and on four cases interpreting the evidentiary rules:

10  *State v. McFarlin*, 110 Ariz. 225, 517 P.2d 87 (1973); *State v. Treadaway*, 116 Ariz. 163,

11  568 P.2d 1061 (1977); *State v. Salazar*, 181 Ariz. 87, 887 P.2d 617 (App. 1994); and *State*

12  *v. Taylor*, 169 Ariz. 121, 817 P.2d 488 (1991).  The claims were also resolved on that basis.

13  (Ex. U, pp. 6-7).  In petitioning the Arizona Supreme Court for review, nothing substantive

14  changed in Petitioner's argument.  (Ex. V.)  He cited the same cases and made the same

15  arguments.  (*Id.*)  As there was nothing in these briefs that would alert the Arizona courts to

16  a federal aspect of this claim, it was not fairly presented.  *See Johnson v. Zenon,* 88 F.3d 828,

17  830-31 (petitioner did not fairly present his federal claim where he "limited his arguments

18  exclusively to state evidentiary law").

20          **2.**      **No State Court Remedies Remain Available.**

21       If a claim has not been fairly presented to the state court, a federal habeas court may

22  determine whether state remedies remain available.  *See Harris v. Reed*, 489 U.S. 255, 269-

23  270 (1989) (O'Connor, J., concurring).  When determining whether state remedies are

24  available, the court looks to the time of filing of the federal habeas petition.  *Engle v. Isaac*,

25  456 U.S. 107, 125 n. 28 (1982).  If, at the time the habeas petition is filed, there are no state

26  remedies available to a petitioner who has failed to fairly present a claim in a procedurally

27  appropriate manner to the state's highest court, the petitioner has technically exhausted the

28  claim by procedural default.  *Swoopes*, 196 F.3d at 1010.  That is the case here.  Although

1   Petitioner has filed an alternative motion to stay this proceeding while he exhausts this claim

2   in state court, he does not identify what remedies remain available.  As Respondents assert,

3   any attempt by Petitioner to now present these unexhausted claims in state court would be

4   futile.  Pursuant to Rule 32.2, ARIZ.R.CRIM.P., a petitioner may not be granted state court

5   relief on any claim which could have been raised in a prior Rule 32 petition for post-

6   conviction relief.  Only if a claim falls within certain exceptions (outlined in sub-sections (d)

7   through (g) of Rule 32.1) and the petitioner can justify why the claim was omitted from a

8   prior petition will the preclusive effect of Rule 32.2 be avoided.  Here, Petitioner presents no

9   argument addressing the applicability of any exception provided in Rule 32.  As such,

10  Petitioner's due process claim is procedurally defaulted.

11      Additionally, the stay and abeyance Petitioner requests is "available only in limited

12  circumstances." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).  It is appropriate only where

13  "there is good cause for petition's failure to exhaust his claims first in state court," and where

14  the unexhausted claim is not "plainly meritless."  As discussed in the "merits" section below,

15  this claim is plainly meritless and a stay is therefore not justified.

16          **3.    Petitioner Cannot Establish Cause And Prejudice.**

17      As Petitioner's due process claim is procedurally defaulted, federal court review is

18  barred absent a showing of legitimate cause for the default and actual prejudice attributable

19  to it, or a demonstration that failure to consider the claim will result in a fundamental

20  miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Sawyer v. Whitley*,

21  505 U.S. 333, 338-339 (1992).  "Cause" is a legitimate excuse for the default and "prejudice"

22  is actual harm resulting from the alleged constitutional violation. *Thomas v. Lewis*, 945 F.2d

23  1119, 1123 (9th Cir. 1991).  To show cause, a petitioner must ordinarily demonstrate that

24  "some factor external to the defense" impeded efforts to raise the claim in state court.

25  *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The fundamental miscarriage of justice

26  exception is only available "where the petitioner supplements his constitutional claim with

27  a colorable showing of factual innocence." *Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir.

28  1995) (*quoting Herrera v. Collins*, 506 U.S. 390, 404 (1993)).  As Petitioner has not argued

1    factual innocence, he must establish cause and prejudice.  He has failed to do so.

2           Petitioner alleges that his appellate counsel's failure to raise his due process claim as

3    a federal issue, despite being implored to do so, constitutes cause.  However, these

4    allegations do not provide grounds for finding "cause."  "[T]he mere fact that counsel failed

5    to recognize the factual or legal basis for a claim, or failed to raise the claim despite

6    recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477

7    U.S. 478, 486 (1986).  In *Murray*, the Supreme Court identified the sort of external

8    impediments which could constitute cause.  They included "a showing that the factual or

9    legal basis for a claim was not reasonably available to counsel," see *Reed v. Ross,* 468 U.S.

10   at 16, or that "some interference by officials . . . made compliance impracticable . . . ."

11   *Brown v. Allen,* 344 U.S. 443, 486, 488 (1953).  Here, Petitioner has not raised any

12   impediment that might constitute cause as it is described in *Murray*, and  an independent

13   review of the record also fails to disclose any such impediment.

14          Petitioner also cannot establish prejudice.  To establish prejudice resulting from a

15   procedural default, a habeas petitioner bears the burden of showing not merely that the errors

16   at his trial constituted a possibility of prejudice, but that they worked to his actual and

17   substantial disadvantage, infecting his entire trial with errors of constitutional dimension.

18   *United States v. Frady,* 456 U.S. 152, 170 (1982).  As set-forth below, Petitioner's due

19   process claim is meritless.  As such, there was no possibility of unconstitutional prejudice

20   infecting his trial.

21          **D.    Merits**

22          Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any

23   claim that was adjudicated on the merits in State court proceedings" unless the state decision

24   was (1) contrary to, or an unreasonable application of, clearly established federal law as

25   determined by the United States Supreme Court; or (2) based on an unreasonable

26   determination of the facts in light of the evidence presented in the State court proceeding.

27   28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 120 S.Ct. 1495 (2000).  A state court's decision

28   can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority,

1    or (2) if it applies the controlling authority to a case involving facts "materially

2    indistinguishable" from those in a controlling case, but nonetheless reaches a different result.

3    *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000).  In determining whether a state

4    court decision is contrary to federal law, the court must examine the last reasoned decision

5    of a state courts the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092, 1101

6    (9th Cir. 2002).

7         A state court's decision can be an unreasonable application of federal law either (1)

8    if it correctly identifies the governing legal principle but applies it to a new set of facts in a

9    way that is objectively unreasonable, or (2) if it extends or fails to extend a clearly

10   established legal principle to a new context in a way that is objectively unreasonable.

11   *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

12                    **1.    Ground I: Violation of Due Process**

13        Petitioner argues that "the jury's consideration of prior crimes propensity evidence

14   violated the due process clause . . . ."  *Reply*, p. 19.  Petitioner further contends that "the rule

15   against 'propensity' evidence in sexual offenses cases must be deemed a fundamental

16   historical principle of justice, and a fundamental component of due process."  *Id.*  However,

17   the United States Supreme Court "has never expressly held that it violated due process to

18   admit other crimes evidence for the purpose of showing conduct in conformity therewith, or

19   that it violated due process to admit other crimes evidence for other purposes without an

20   instruction limiting the jury's consideration of the evidence to such purposes."  *Garceau v.*

21   *Woodformd*, 275 F.3d 769, 774 (9th Cir. 2001), *overruled on other grounds by Woodford v.*

22   *Garceau*, 538 U.S. 202 (2003).  In fact, the Supreme Court has expressly left open this

23   question.  *See Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991) ("Because we need not reach

24   the issue, we express no opinion on whether a state law would violate the Due Process

25   Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a

26   charged crime").  On these grounds alone it cannot be said that the admission of propensity

27   evidence at Petitioner's trial was contrary to, or an unreasonable application of, clearly

28   established federal law as determined by the United States Supreme Court, and thus does not

1    merit relief.

2         Petitioner contends, however, that due process was nevertheless violated because the

3    jury instructions operated to decrease the prosecution's burden of proof because they

4    provided that, if the jury found that the state had proved by "clear and convincing" evidence,

5    rather than beyond a reasonable doubt, that Petitioner had committed the previous alleged

6    molestations involving Norwood and Foss, they could infer that he had "a propensity for

7    sexual molestation or aberration." *Reply*, p. 8. Due process "requires the prosecution to

8    prove every element charged in a criminal offense beyond a reasonable doubt." *Gibson v.*

9    *Ortiz*, 387 F.3d 812, 820 (9th Cir. 2004) (citing *In re Winship*, 397 U.S. 358, 364 (1970)). If

10   the jury is not properly instructed concerning the presumption of innocence until proven

11   guilty beyond a reasonable doubt, a due process denial results. *See Middleton v. McNeil*, 541

12   U.S. 433, 437 (2004). "Any jury instruction that 'reduce[s] the level of proof necessary for

13   the Government to carry its burden . . . is plainly inconsistent with the constitutionally rooted

14   presumption of innocence.'" *Gibson*, 387 F.3d at 820 (quoting *Cool v. United States*, 409

15   U.S. 100, 104 (1972)).

16        In *Gibson*, a case upon which Petitioner heavily relies, the Ninth Circuit found

17   unconstitutional California jury instructions that allowed a jury to (1) find that a defendant

18   had committed prior sexual offenses by a preponderance of the evidence rather than by a

19   beyond  a reasonable doubt, (2) infer from the defendant's past uncharged offenses that he

20   had a predilection for committing sexual offenses, and (3) infer guilt of the charged offense

21   based on those predilections. 387 F.3d at 822-23. The jury in *Gibson* was also given a

22   standard "beyond a reasonable doubt" instruction, but the Ninth Circuit found that this

23   instruction did not prevent the possibility of the jury finding the defendant guilty only on the

24   basis of past offenses that had been established by a preponderance of the evidence. *Id.*

25        At first blush, Petitioner's case appears to be much like *Gibson*. The jury instruction

26   to which Petitioner objects, like the California instruction, allows the State to prove the prior

27   acts by a standard lower than beyond a reasonable doubt. *Final Jury Instructions*, p. 16.

28   Upon further inspection, however, Petitioner's case is readily distinguishable. The Arizona

jury instruction does not allow the jury to infer that Petitioner had a predilection, but is limited to the purpose of establishing intent or absence of mistake or accident.  *Id.*  More important, though, the nature of the prior acts in the instant case are unlike those found to be improperly proven in *Gibson*.  In *Gibson*, the Ninth Circuit was clearly concerned that the jury was presented evidence of *uncharged* acts which the jury was then permitted to conclude occurred based on "clear and convincing evidence." 387 F.3d at 822-23.  In Petitioner's case, the prior acts were not uncharged, but were previous felony convictions.  (Exhibit C.)  As such, the acts had previously been established under a "beyond a reasonable doubt" standard.  This fact clearly distinguishes Petitioner's claim from the concerns raised in *Gibson*, where the court repeatedly noted that the prior acts were uncharged.  387 F.3d at 822 ("uncharged sexual offenses"), 823 ("prior alleged offenses"), and 824 ("prior uncharged sex offenses").  Petitioner has not identified, and the Court has not independently discovered, any case that would support the notion that the admission of prior felony convictions, as opposed to uncharged acts, under any standard of proof, if otherwise appropriate, constitutes a violation of due process.  It is recommended that this claim be denied.

## 2.    Ground II: Ineffective Assistance of Counsel

Pursuant to the Sixth Amendment of the United States Constitution, a criminal defendant has a right to "effective assistance of counsel."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to determine if Petitioner was denied effective assistance of counsel, the court must determine "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.*  The *Strickland* standard for ineffective assistance of counsel has two components.  A defendant must first demonstrate that counsel's performance was deficient, i.e., that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed a defendant by the Sixth Amendment. 466 U.S. at 687.  It requires the defendant to show that counsel's conduct "fell below an objective standard of reasonableness."  466 U.S. at 687-688.  Second, a defendant must show that the deficient performance prejudiced the defense, i.e., that counsel's errors were so serious as to deprive the defendant of a fair

trial. 466 U.S. at 687.  In other words, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  The standard for establishing ineffective assistance of appellate counsel is essentially the same as that for trial counsel: a petitioner must show that appellate counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the defendant would have prevailed on appeal.  466 U.S. at 694.

In reviewing counsel's performance, the court must be highly deferential to counsel's behavior.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  466 U.S. at 689.  A reviewing court may first consider the prejudice prong of the *Strickland* test, and if it finds that the alleged unprofessional conduct would not have changed the result of the proceeding, it need not consider the performance prong.  *Id*.

Here, Petitioner argues that his original appellate counsel was ineffective in that he failed to raise before the Arizona Supreme Court all the claims that had been raised before the Arizona Court of Appeals.  This failure, Petitioner alleges, may result in a finding that Petitioner failed to exhaust these claims in the State courts.  However, as even Petitioner recognizes, no prejudice resulted from this alleged omission because *Swoopes* requires only that the claims be submitted to the Arizona Court of Appeals for purposes of exhaustion.  196 F.3d at 1010.  As such, it is recommended that this claim be denied.

## III.   RECOMMENDATION

For all of the above reasons, **THE MAGISTRATE JUDGE RECOMMENDS** that the District Court, after its independent review, issue an Order **denying** Petitioner's Petition for Writ of Habeas Corpus filed May 11, 2005 [Docket No. 1];

**IT IS FURTHER RECOMMENDED** that all pending motions in this matter be **denied as moot**.

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

1   However, the parties shall have ten (10) days from the date of service of a copy of this

2   recommendation within which to file specific written objections with the District Court. *See*

3   28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure.

4   Thereafter, the parties have ten (10) days within which to file a response to the objections.

5   If any objections are filed, this action should be designated case number: **CV 05-1388-PHX-**

6   **FJM**. Failure to timely file objections to any factual or legal determination of the Magistrate

7   Judge may be considered a waiver of a party's right to *de novo* consideration of the issues.

8   *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

9   DATED this 3rd day of November, 2006.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

27   Jacqueline Marshall
     United States Magistrate Judge

28